**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPARBAR LTD and JASVINDER SINGH GILL,<br><br>*Plaintiffs*,<br><br>v.<br><br>KENNY LAM and LIN KUAN LIANG NICOLAS<br><br>*Defendants*. | CIVIL ACTION NO.<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

SparBar LTD ("LTD") and Jasvinder Singh Gill ("Gill"), by its attorneys Mandelbaum Barrett, a Professional Corporation, having a business address at 570 Lexington Avenue, 21st Floor, New York, New York as and for its Complaint against Defendants, Kenny Lam ("Lam") and Lin Kuan Liang Nicolas ("Nic"), complain and allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff LTD is an entity duly organized and existing under the laws of the United Kingdom.

2. Plaintiff Gill is an individual who resides in the United Kingdom. Gill is the owner, sole shareholder and founder of LTD.

3. Defendant Lam does business and maintains an office at 7 Penn Plaza, Suite 420, New York, New York. Lam resides at 28-10 Jackson Ave, Apt 40L, Long Island City, New York.

4. Defendant Nic does business and maintains an office at 136-20 38th Avenue, Suite 3B, Flushing, New York.

1

5. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because it is between citizens of different states, and the amount in controversy is greater than $75,000, exclusive of interest and costs.

6. The Court has personal jurisdiction over the Defendants because each maintains a continuous presence within the State of New York, including conducting business in the State of New York. The Court also has personal jurisdiction over the Defendants on the basis of specific jurisdiction because, upon information and belief, the acts which give rise to this action were performed by the Defendants while in the State of New York.

7. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c) because Defendants are subject to personal jurisdiction in this district and a substantial part of the events giving rise to Plaintiff's claims, including the Defendants' conduct, set forth below, occurred in the district.

## FACTUAL ALLEGATIONS

8. In approximately 2013, Gill, through LTD, invented various boxing sparring devices for training purposes. Gill, through LTD, brought his revolutionary ideas and products to the market by developing various boxing, fitness, and mixed martial arts fitness training devices.

9. In approximately 2015, LTD's products began to gain significant global popularity when its product videos began to go viral on social media websites such as Facebook and Instagram.

10. To further cement is brand name in the boxing and fitness industry, LTD began to work with "brand ambassadors" such as Anthony Joshua, Conor McGregor, Roy Jones Jr, Usher Kevin Hart, Sugar Ray Leonard and Jake Paul.

4884-2645-2809, v. 1

11. These individuals, who are well recognized in their industry, began to use SparBar products which, in turn, helped LTD generate significant additional sales revenue.

12. For marketing its products in the United Kingdom, LTD worked with parents, children, and other individuals in the United Kingdom interested in SparBar products as "brand ambassadors".

13. The use of SparBar products by numerous individuals helped establish SparBar as a well-known premier brand in the boxing and fitness industry.

14. By 2019, LTD was a pioneer in the boxing industry with increased sales revenue each year from the first year it began its business operations.

15. In order to increase its sales and presence in the industry, LTD, through Gill, hired lawyers, accountants, marketing agencies, a social media marketing agency, a public relations agency, and logistics companies.

16. Further, in order to reduce its own costs which would benefit customers by reducing the costs of its products sold to the general public, in approximately 2020, LTD and Topline Global and Investments LTD ("Topline") entered into a contractual relationship pursuant to which Topline would manufacture SparBar products for worldwide distribution.

17. In approximately, November 2019, Gill was introduced to Jiang Yu a/k/a Jay Yu ("Yu"). Yu is the principal of I Financial Ventures Group, LLC ("FVG").

18. Gill was led to believe that by Yu and FVG that they were seasoned investors who had substantial experience assisting start-ups with, among other things, raising capital.

19. Yu was impressed with what Gill and LTD had developed and was enamored with LTD's success.

20. As such, Yu wanted to be part of the innovations that Gill was bringing to the market, including LTD's global footprint, the products it was advertising in its catalog, and its network of ambassadors. Yu therefore began to pitch the idea of an initial public offering ("IPO") which would encompass the SparBar brand.

21. Yu induced Gill to form a new entity in the United States known as SparBar, Inc., ("INC") to market its brand and products in the United States. Yu proposed the IPO for INC.

22. Yu then introduced Gill to Defendants, Nic and Lam. Yu induced Gill to have Lam and Nic serve on INC's board of directors by representing, among other things, that Nic and Lam were individuals with significant experience serving as board directors with start-ups which were seeking an IPO.

23. Yu further proposed that Gill contact his "friends and family" to raise capital for INC's operations and, who in return for their capital investment, would receive shares in INC.

24. On November 27, 2019, INC was formed as a Delaware corporation with Nic and Lam serving as directors. Lam was also appointed as INC's Chief Operating Officer and Nic as the Chief Financial Officer. Gill was and remains the majority shareholder of INC.

25. To date, INC has over one-hundred shareholders comprised of various individuals and companies.

26. In late 2022, Nic and Lam began a systematic effort to take over the operations of both LTD and INC. To do so, however, Nic and Lam needed to oust Gill, the founder and innovator of the SparBar products and name, from both companies.

27. To accomplish their objective, Defendants, Nic and Lam, began to publish defamatory statements about Gill and LTD to third persons, including Gill's wife, parents, other

family members, vendors, service providers, brand ambassadors, potential investors, and current investors.

28. Specifically, Defendants sent the following letters/emails:

    a. On or about October 22, 2022, Defendants sent a letter to Gill's wife Sandra Gill.

    b. On or about October 22, 2022, Defendants sent another letter to Gill's parents.

    c. On or about August 17, 2022, Defendants sent an email to all both INC's and LTD's vendors and brand ambassadors.

    d. On or about August 23, 2022, Defendants sent an email to all of INC's shareholders and investors.

(Collectively "Defamatory Letters/Emails").

29. In each of these Defamatory Letters and Emails, Lam and Nic made knowing false written statements about Gill and LTD.

30. By way of example, in each of these written Defamatory Letters and Emails, Lam and Nic stated that Gill had misstated LTD's corporate accounts which resulted in the underpayment of LTD's tax liability.

31. In the same vein, in each of the Defamatory Letters/Emails Lam and Nic stated that Gill had failed to pay his own personal tax liabilities.

32. In each of the Defamatory Letters/Emails Defendants falsely claimed, among other things, that Gill had wrongfully diverted funds to himself and LTD, paid himself a salary that he was otherwise not entitled to receive, and used INC's funds to purchase luxury items for his wife and further funded his living expenses.

33. Further, in each of the Defamatory Letters/Emails, Defendants falsely claimed that Gill engaged in fraudulent conduct by stealing money from investors.

34. The Defamatory Letters/Emails were made by Defendants to harm Gill, LTD, and INC and to interfere with their respective business dealings, including the successful operation of both LTD and INC.

35. For example, LTD and INC relies upon its brand ambassadors for marketing and name recognition. Brand ambassadors such as Roy Jones, Jr., Rodney Jerkins, and Michael Bisping have presence and standing in the boxing and fitness communities. Their use of the SparBar product provided LTD and INC with significant prospect of generating revenue. Upon receipt of the Defamatory Letters/Emails, these brand ambassadors, among others, severed their relationship with the SparBar name.

36. By way of further example, upon receipt of these Defamatory Letters/Emails, Topline immediately ceased its business dealings with LTD.

37. Because of the Defamatory Letters/Emails, LTD's and INC's vendors began to sever their relationships thereby leaving LTD and INC without the appropriate professionals in place to conduct their business operations and increase sales revenue while ensuring world-wide brand recognition.

38. Further, because of the Defamatory Letters/Emails, investors began to immediately contact Gill to either a) demand the return of their investment thereby putting the continued viability of INC at jeopardy and/or b) notify Gill that the investors would not contribute any more capital that the investors previously intended to contribute.

39. In summary, upon receipt of these Defamatory Letters/Emails, numerous service providers and brand ambassadors as well as potential investors immediately ceased their business dealings with Gill, LTD, and INC.

4884-2645-2809, v. 1

# FIRST COUNT
## (Slander and Libel)

40. Plaintiffs repeat the allegations of paragraphs 1 through 39 as if set forth herein at length.

41. Lam and Nic, on various occasions, knowingly made false verbal and written statements about LTD and Gill.

42. In such false statements, Lam and Nic disparaged Gill and claimed, among other things, that LTD and Gill engaged in criminal conduct.

43. No reasonable grounds existed for Lam's and Nic's false statements.

44. Such false statements were not privileged or entitled to immunity.

45. These false statements made by Lam and Nic were made intentionally, recklessly and maliciously, with knowledge of their falsity or in reckless disregard of their truth or falsity.

46. Lam's and Nic's false statements tended to injure and cast aspersions on the honesty, integrity, morality and commercial and business reputation of LTD and Gill, thereby exposing them to public contempt and ridicule and to injury and damage to their businesses.

47. Lam's and Nic's statements concerned LTD's and Gill's trade and business practices and therefore constitute slander per se.

48. As a result of such false statements, LTD and Gill have been injured.

49. By their actions, Lam and Nic intentionally and deliberately slandered and defamed LTD and Gill, thereby causing LTD and Gill substantial damage and impacting on the business performance of LTD and Gill.

**WHEREFORE**, Plaintiffs LTD and Gill demand judgment on this First Count against Defendants, Lam and Nic, awarding as follows:

    a. Compensatory damages;

b. Punitive damages;

c. Interest, attorneys' fees and costs;

d. Ordering Defendants to retract their false claims and statements about Plaintiffs publicly in a manner at least equal in reach to that by which they published their false statements; and

e. Such other and further relief as the Court may deem to be appropriate.

## SECOND COUNT
### (Tortious Interference with Contractual Relations)

50. Plaintiffs repeat all of the allegations of paragraphs 1 through 49 as if set forth at length.

51. Plaintiffs had a legally protectable interest arising from a reasonable expectation of economic advantage deriving from their pursuit of their contractual relationships with investors, shareholders, vendors, and brand ambassadors.

52. Defendants were not a party to any of these contracts.

53. Defendants intentionally and without justification interfered with Plaintiffs' interests and their contractual relations.

54. Defendants' interference caused a loss of prospective gain to Plaintiffs.

55. As a direct and proximate result of Defendants' interference, Plaintiffs have been substantially damaged.

56. Defendants are therefore liable to Plaintiffs for tortiously interfering with their contractual relations.

**WHEREFORE**, Plaintiffs LTD and Gill demand judgment on this Second Count against Defendants Lam and Nic, awarding as follows:

a. Compensatory damages;

b. Punitive damages;

4884-2645-2809, v. 1

c. Interest, attorneys' fees and costs; and

d. Such other and further relief as the Court may deem to be appropriate.

## **THIRD COUNT**
### (Tortious Interference with Economic Advantage)

57. Plaintiffs repeat the allegations in paragraphs 1 through 56 as if set forth at length.

58. Plaintiffs had a legally protectable interest arising from a reasonable expectation of economic advantage deriving from their business relationships with its investors, shareholders, vendors, and brand ambassadors.

59. Defendants intentionally and without justification interfered with those interests as set forth above.

60. Defendants' interference with those interests caused Plaintiffs the loss of prospective economic gain.

61. As a direct and proximate result thereof, Plaintiffs have been substantially damaged.

62. Defendants are, therefore, liable to Plaintiffs for tortiously interfering with their economic advantage.

**WHEREFORE**, Plaintiffs LTD and Gill demand judgment on this Third Count against Defendants, Lam and Nic, awarding as follows:

a. Compensatory damages;

b. Punitive damages;

c. Interest, attorneys' fees and costs; and

d. Such other and further relief as the Court may deem to be appropriate.

4884-2645-2809, v. 1

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: January 11, 2023   **MANDELBAUM BARRETT P.C.**

*/S/ ANDREW R. BRONSNICK*
Andrew R. Bronsnick, Esq.
570 Lexington Avenue, 21st Floor
New York, New York 10022
Phone: 212-776-1834
Fax: 212-586-0870
abronsnick@mblawfirm.com

Attorneys for Plaintiffs, SparBar, LTD
and Jasvinder Singh Gill