**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Sparbar Ltd.**; *and* <br> **Jasvinder Singh Gill**, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> **Kenny Lam**; *and* <br> **Lin Kuan Liang Nicolas**, <br><br> *Defendants*. | Case No. 1:23-cv-00184-CBA-VMS <br><br> **FIRST AMENDED COMPLAINT** |

**COMES NOW SparBar Ltd** and **Jasvinder Singh Gill**, by their Counsel, Baruch S. Gottesman, Esq., of GOTTESMAN LEGAL PLLC, with their First Amended Complaint against Defendants, Kenny Lam and Lin Kuan Liang Nicolas, and do complain and allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Sparbar Ltd. is a Corporation organized and existing under the laws of the United Kingdom.

2. Plaintiff Jasvinder Singh Gill is a natural person resident at the United Kingdom. He is the owner, sole shareholder and founder of Sparbar Ltd.

3. Where appropriate in this First Amended Complaint, Sparbar Ltd. and Jasvinder Singh Gill are referred to as "Ltd." and "Gill", respectively; and collectively as the Plaintiffs.

4. Upon information and belief, Defendant Kenny Lam is a natural person resident at Long Island City in the County of Queens in the State of New York. His principal place of business is at the City, County and State of New York.

1

5. Upon information and belief, Defendant Lin Kuan Liang Nicolas is a natural person resident at Flushing in the County of Queens in the State of New York.

6. Where appropriate in this First Amended Complaint, Messrs. Lam and Nicolas are referred to as "Lam" and "Nic", respectively; and collectively as the Defendants.

7. Plaintiffs are exclusively citizens of the United Kingdom and not of any State.

8. Defendants are exclusively citizens of New York and not of any other state.

9. This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because it is between citizens of different states, and the amount in controversy is greater than $75,000, exclusive of interest and costs.

10. This Honorable Court has personal jurisdiction over the Defendants because each maintains a continuous presence within the State of New York, including conducting business in the State of New York. The Court also has personal jurisdiction over the Defendants on the basis of specific jurisdiction because, upon information and belief, the acts which give rise to this action were performed by the Defendants while in the State of New York.

11. Venue is proper in the Southern District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to Plaintiff's claims, including the Defendants' conduct, set forth below, occurred here.

**FACTUAL ALLEGATIONS**

12. In approximately 2013, Gill invented various boxing sparring devices for training purposes. Plaintiffs brought Gill's revolutionary ideas and products to the market by developing various boxing, fitness, and mixed martial arts fitness training devices.

13. In approximately 2015, Ltd.'s products began to gain significant global popularity when its product videos began to go viral on social media including Facebook and Instagram.

14. To further cement is branding in the boxing and fitness industry, Ltd. began to work with "brand ambassadors" such as Anthony Joshua, Conor McGregor, Roy Jones Jr, Usher Kevin Hart, Sugar Ray Leonard and Jake Paul – all of whom are celebrities in the boxing community.

15. The brand ambassadors began to use and promote SparBar products which helped Plaintiff generate significant additional sales revenue.

16. For marketing its products in the United Kingdom, Ltd. also worked with parents, children, and other individuals in the United Kingdom interested in SparBar products as "brand ambassadors".

17. SparBar became a premier brand in the boxing and fitness industry.

18. By 2019, Ltd. was well-established in the boxing industry and enjoyed increased sales revenue each year from the first year it began its business operations.

19. To increase its sales and industry presence, Plaintiffs hired lawyers, accountants, marketing agencies, a social media marketing agency, a public relations agency, and logistics companies.

20. To reduce the costs of its products, in approximately 2020, Ltd. entered into a contractual relationship with Topline Global and Investments Ltd. ("Topline") to manufacture Sparbar products for worldwide distribution.

21. These relationships and Plaintiffs' reputations in the industry were central to their business success.

22. In approximately November 2019, Gill was introduced to Jiang "Jay" Yu, the principal of I Financial Ventures Group, LLC. Where appropriate in this First Amended Complaint, Mr. Yu and I Financial Ventures Group are referred to as "Yu" and "FVG", respectively.

23. Yu and FVG led Gill to believe that Yu and FVG were seasoned investors who had substantial experience assisting start-ups with raising capital and other services.

24. Yu pitched to Plaintiffs the idea of an initial public offering ("IPO") encompassing the SparBar brand.

25. Yu advised and induced Gill to form a new entity in the United States known as SparBar, Inc., to market its brand and products in the United States, and that the U.S. Company go public.

26. Yu then introduced Gill to Defendants, Nic and Lam.

27. Yu advised and induced Gill to allow Lam and Nic to serve on the U.S. Company's Board of Directors by representing, among other things, that Nic and Lam were individuals with significant experience serving as board directors with start-ups going public.

28. Yu advised and directed Gill to contact his "friends and family" to raise capital for the U.S. Company's operations and to offer those family members shares in the U.S. Company

29. At Yu's direction and advise, Gill formed the U.S. Company on November 27, 2019, in Delaware and Defendants were appointed as Directors.

30. Additionally, Lam was appointed as the Chief Operating Officer and Nic as the Chief Financial Officer of the U.S. Company.

31. At all times, Gill was and remains the majority shareholder of the U.S. Company.

32. The U.S. Company has over one-hundred shareholders who are various individuals, companies, and other investment holding vehicles, including ones in the U.K.

33. In late 2022, Defendants began a campaign to take over both Ltd. and the U.S. Company. That could only be successful if Defendants ousted Gill – the founder, innovator and corporate face synonymous with Sparbar – from both Companies.

34. Upon information and belief, this goal – to oust Gill from his roles at Ltd. and the U.S. Company – motivated the campaign of defamation described below.

35. Defendants defamed Plaintiffs by publishing false information to third parties.

### A.  Letter to Gill's Father

36. Examples of these publications includes a bizarre, unsigned letter sent from "Board Members of SparBar Inc." on or about October 22, 2022 which purported to send along papers related to a case against Plaintiffs to Mr. Gills' father.

37. The Letter alleges that:

   i.) "your son has HIDDEN THIS DOCUMENTATION REGARDING FRAUDULANT ACTIVITY from YOU.";

   ii.) "[Gill] has defrauded his own Brother Harvinder Singh Gill of £ 80,000 and a Group of Harvinder's Friends for a further £ 150,000."; *and*

   iii.) "As Jasvinder has been directly profiting from these FUNDS that have been Fraudulently taken by Jasvinder Singh Gill."

See **Exhibit A**, which is a true and accurate copy of the Letter with accompanying paperwork (all spellings and formatting as in original).

5

38. These statements are not and were not true.

39. These statements were not made subject to any privilege or in the context of litigation. To the contrary, the Letter to Gill's father expressly acknowledge the Defendants' difficulty in pursuing legal proceedings and the outreach to the Plaintiff's father was intended to circumvent normal legal proceedings by having Gill's father pressure his son in some way.

40. The Statements in the accompanying paperwork are not and were not true.

41. These statements in the accompanying paperwork were not made with any authorization or privilege.

42. The false statements published to Gill's father charged Plaintiffs with serious crimes including fraud, theft, embezzlement, conversion and other violations of the penal Codes of Delaware, New York and the United Kingdom.

43. The false statements published to Gill's father would tend to and did injure Plaintiffs in their trade, business and profession.

### B.     Letter to Gill's Wife

44. Another bizarre Letter was addressed to Gill's wife on or about October 22, 2022, which alleges that:

> i.) "your Husband has HIDDEN THIS DOCUMENTATION REGARDING FRAUDULANT ACTIVITY from YOU.";

See **Exhibit B**, which is a true and accurate copy of the Letter (all spellings and formatting as in original).

45. This statement was not and is not true.

46. This statement was not made subject to any privilege or in the context of litigation.

47. The Statements in the accompanying paperwork are not and were not true.

48. These statements in the accompanying paperwork were not made with any authorization or privilege.

49. The false statements published to Gill's wife charged Plaintiffs with serious crimes including fraud, theft, embezzlement, conversion and other violations of the penal Codes of Delaware, New York and the United Kingdom.

50. The false statements published to Gill's wife would tend to and did injure Plaintiffs in their trade, business and profession.

### C.  Press Release to Shareholders and Brand Ambassadors

51. A press release was circulated by Defendants on August 21, 2022, to the shareholders, Brand ambassadors, and other parties associated with the Plaintiff. It alleged:

   i.) "[Gill's behavior] was completely unlawful and this new alleged board is similarly unlawful"

   ii.) "[Gill] is trying to stop us from informing you of the truth"

   iii.) The Board of Sparbar Inc. is "phony".

See **Exhibit C**, which is a true and accurate copy of the press release with the attached letters containing additional false statements.

52. The statements were not and are not true.

53. The statement were not made subject to any privilege or in the context of litigation.

54. The Statements in the accompanying paperwork were not and are not true.

55. These statements in the accompanying paperwork were not made with any authorization or privilege.

56. The false statements published to the shareholders charged Plaintiffs with serious crimes including fraud, theft, embezzlement, conversion and other violations of the penal Codes of Delaware, New York and the United Kingdom.

57. The false statements published to the shareholders would tend to and did injure Plaintiffs in their trade, business and profession.

### D. Second Press Release to Shareholders and Brand Ambassadors

58. A press release was circulated by Defendants on August 31, 2022, to the shareholders and other parties associated with the Plaintiff. It alleged:

   i.) "Jasvinder Singh Gill attempted to usurp the Board to cover up his fraudulent self-dealing while he uses investors monies to fund a luxurious lifestyle for his wife and himself"

   ii.) There would be further actions against Gill and other parties for "aiding and assisting him in fraud against US investors in the US and before the High Court of England & Wales".

See **Exhibit D**, which is a true and accurate copy of the press release (all spelling as in original).

59. The statements were not and are not true.

60. The statement were not made subject to any privilege or in the context of litigation.

61. The false statements published to the shareholders charged Plaintiffs with serious crimes including fraud, theft, embezzlement, conversion and other violations of the penal Codes of Delaware, New York and the United Kingdom.

62. The false statements published to the shareholders would tend to and did injure Plaintiffs in their trade, business and profession.

8

63. Additionally, in the accompanying paperwork sent to Gill's Father and Wife, and the Press release there were false statements that Gill misstated Ltd.'s corporate accounts which resulted in the underpayment of Ltd. tax liability.

64. The accompanying paperwork falsely stated that Gill failed to pay his own personal tax liabilities.

65. The accompanying paperwork falsely stated that Gill unlawfully diverted funds to himself and Ltd., paid himself a salary that he was otherwise not entitled to receive, and used Inc. funds to purchase luxury items for his wife and further funded his living expenses.

66. The accompanying paperwork falsely stated that Gill engaged in fraudulent conduct by stealing money from investors.

67. The statement were not made subject to any privilege or in the context of litigation.

68. The false statements published to the shareholders charged Plaintiffs with serious crimes including fraud, theft, embezzlement, conversion and other violations of the penal Codes of Delaware, New York and the United Kingdom.

69. The false statements published to the shareholders would tend to and did injure Plaintiffs in their trade, business and profession.

70. The Defendants intended to harm Plaintiffs through the false statements and to leverage that slander to interfere with Plaintiff's business dealings, including their successful operation of both Ltd. and the U.S. Company.

71. Without limitation to other damages, brand ambassadors – a key marketing tool – severed their relationship with Plaintiff.

72. Without limitation to other damages, Topline immediately ceased its business relationship with Plaintiff.

73. Without limitation to other damages, some of Plaintiff's vendors severed their business relationships with Plaintiff, leaving Ltd. and the U.S. Company without the appropriate professionals in place to conduct their business operations and increase sales revenue while ensuring world-wide brand recognition.

74. Without limitation to other damages, investors began to immediately contact Gill to either a) demand the return of their investment thereby putting the continued viability of the U.S. Company at jeopardy and/or b) notify Gill that the investors would not contribute any more capital that the investors previously intended to contribute.

**FIRST CAUSE OF ACTION**
**(Slander and Libel under New York law)**

75. Plaintiffs repeat all prior allegations and incorporate them in full here.

76. Defendants knowingly made false verbal and written statements about Plaintiffs.

77. These false statements disparaged Plaintiffs charged Plaitniff with serious crimes and injured Plaintiffs in their business relationships

78. No reasonable grounds existed for Defendants false statements.

79. The false statements were not privileged or entitled to immunity.

80. These false statements made by Defendants were made intentionally, recklessly and maliciously, with knowledge of their falsity or in reckless disregard of their truth or falsity.

81. Defendants false statements tended to injure and cast aspersions on the honesty, integrity, morality and commercial and business reputation of Plaintiffs, thereby exposing them to public contempt and ridicule and to injury and damage to their businesses.

82. Defendants statements concerned Plaintiffs trade and business practices and therefore constitute slander per se.

83. As a result of such false statements, Plaintiffs were injured.

84. By their actions, Defendants intentionally and deliberately slandered and defamed Plaintiffs, thereby causing Plaintiffs substantial damage and impacting on the business performance of Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment on this First Count against Defendants, Defendants, awarding as follows:

    a. Compensatory damages;

    b. Punitive damages;

    c. Interest, attorneys' fees and costs;

    d. Ordering Defendants to retract their false claims and statements about Plaintiffs publicly in a manner at least equal in reach to that by which they published their false statements; *and*

    e. Such other and further relief as the Court may deem to be appropriate.

## SECOND CAUSE OF ACTION
**(Slander and Libel under United Kingdom law)**

85. Plaintiffs repeat all prior allegations and incorporate them in full here.

86. Without prejudice to the First Cause of Action, additionally and in the alternative, the Defendants are liable for defamation under UK law because they published negative false statements of fact referring to the Plaintiffs.

## THIRD CAUSE OF ACTION
**(Tortious Interference with Contractual Relations)**

87. laintiffs repeat all prior allegations and incorporate them in full here.

88. Plaintiffs had a legally protectable interest arising from a reasonable expectation of economic advantage deriving from their pursuit of their contractual relationships with investors, shareholders, vendors, and brand ambassadors.

89. Defendants were not a party to any of these contracts.

90. Defendants intentionally and without justification interfered with Plaintiffs' interests and their contractual relations.

91. Defendants' interference caused a loss of prospective gain to Plaintiffs.

92. As a direct and proximate result of Defendants' interference, Plaintiffs were substantially damaged.

93. Defendants are therefore liable to Plaintiffs for tortiously interfering with their contractual relations.

> **WHEREFORE**, Plaintiffs demand judgment on this Third Cause of Action against Defendants, awarding as follows:

a. Compensatory damages;

b. Punitive damages;

c. Interest, attorneys' fees and costs; and

d. Such other and further relief as the Court may deem to be appropriate.

## FOURTH CAUSE OF ACTION
**(Tortious Interference with Economic Advantage)**

94. Plaintiffs repeat all prior allegations and incorporate them in full here.

12

95. Plaintiffs had a legally protectable interest arising from a reasonable expectation of economic advantage deriving from their business relationships with its investors, shareholders, vendors, and brand ambassadors.

96. Defendants intentionally and without justification interfered with those interests as set forth above.

97. Defendants' interference with those interests caused Plaintiffs the loss of prospective economic gain.

98. As a direct and proximate result thereof, Plaintiffs have been substantially damaged.

99. Defendants are, therefore, liable to Plaintiffs for tortiously interfering with their economic advantage.

**WHEREFORE**, Plaintiffs demand judgment on this Fourth Cause of Action against Defendants awarding as follows:

a. Compensatory damages;

b. Punitive damages;

c. Interest, attorneys' fees and costs; and

d. Such other and further relief as the Court may deem to be appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand trial by jury in this action of all issues so triable.

Dated: **May 8, 2023**

By: *[signature]*

RESPECTFULLY SUBMITTED,

Baruch S. Gottesman, Esq.
New York Bar No. 4480539
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
Fax: (212) 859-7307
bg@gottesmanlegal.com
*Counsel for all Plaintiffs:*
*SparBar, LTD and Jasvinder Singh Gill*

Served via ECF