**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SPARBAR LTD.**; *and* **JASVINDER SINGH GILL**, *Plaintiffs*, *v.* **KENNY LAM**; *and* **LIN KUAN LIANG NICOLAS**, *Defendants*. | Case No. **1:23-cv-00184-CBA-VMS** |

**MEMORANDUM OF LAW**  *by*
**PLAINTIFFS**  *in Opposition to*
**DEFENDANTS' MOTION TO DISMISS**

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Plaintiffs*

i

## A     Table of Contents

B.     Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

C.     Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D.     Factual and Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

E.     Argument: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       I.     Legal Standards that Apply to
             Consideration of this Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . 3

       II.     The Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

             a.     Defamation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                   1.     False Statement . . . . . . . . . . . . . . . . . . . . . . . 5
                   2.     Published to a Third Party . . . . . . . . . . . . . . 6
                   3.     Lack of Privilege . . . . . . . . . . . . . . . . . . . . . 7
                   4.     Caused Harm or Actionable Per Se . . . . . . 8

             b.     Claim Under English Law . . . . . . . . . . . . . . . . . . . . . . . . 9
             c.     Tortious Interference . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

F.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B.   **Table of Authorities**

Page(s)

**Cases**

*16 Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015) .................................................................................................. 9

*Ansoralli v. CVS Pharmacy, Inc.*,
   No. 16-CV-1506, 2017 U.S. Dist. LEXIS 233792 (JRR) ....................................................... 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................... 3, 4

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) .................................................................................................. 4

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
   547 F.3d 115 (2d Cir. 2008) .................................................................................................. 9

*Chambers v. Times Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) .............................................................................................. 3, 4

*Corrigan v. Bobbs-Merill Co.*,
   228 N.Y. 58 (1920) ................................................................................................................ 6

*Deaton v. Napoli*,
   No. 17-CV-4592, 2019 U.S. Dist. LEXIS 167954 (GRB) .................................................. 10

*Faliano v. Fid. Nat'l Title Ins. Co.*,
   684 F.3d 309 (2d Cir. 2012) .................................................................................................. 3

*Fearon v. Treanor*,
   272 N.Y. 268 (1936) .............................................................................................................. 2

*Front, Inc. v. Khalil*,
   24 N.Y.3d 713 (2015) ............................................................................................................ 7

*Glob. Supplies NY, Inc. v. Electrolux Home Prods.*,
   2022 U.S. App. LEXIS 7108 (2d Cir. Mar. 18, 2022) .......................................................... 8

*Global Network Communs., Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006)............................................................................................... 4

*Goldman v. Barrett*,
    733 F. App'x 568 (2d Cir. 2018) ...................................................................................... 8

*Green v. Hinds*,
    No. 17-CV-5422, 2018 U.S. Dist. LEXIS 208965 (ARL)...................................................... 4

*Greer v. Media*,
    2023 U.S. App. LEXIS 7407 (2d Cir. Mar. 29, 2023)............................................................ 5

*Gross v. Cantor*,
    270 N.Y. 93 (1936) ............................................................................................................ 6

*Hengjun Chao v. Mount Sinai Hosp.*,
    476 F. App'x 892 (2d Cir. 2012)...................................................................................... 10

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
    146 F.3d 66 (2d Cir. 1998)................................................................................................. 4

*Kim v. Kimm*,
    884 F.3d 98 (2018)............................................................................................................. 3

*Lerman v. Flying Distrib. Co.*,
    745 F.2d 123 (2d Cir. 1984).............................................................................................. 4

*Milton v. Wazed*,
    No. 16-cv-4542, 2018 U.S. Dist. LEXIS 56115 (JO).......................................................... 3

*Morrison v. Nat'l Broad. Co.*,
    19 N.Y.2d 453 (1967) ....................................................................................................... 8

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)........................................................................................................... 4

*Serdarevic v. Centex Homes, LLC*,
    760 F. Supp. 2d 322 (S.D.N.Y. 2010)................................................................................ 4

*Summer in Gottwald v. Sebert, Cases*,
    2023 N.Y. Lexis 913 (2023) ............................................................................................. 7

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017).............................................................................................. 5

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
   132 A.D.3d 82 (N.Y. App. Div. 1st Dep't 2015) ................................................................... 6

*Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*,
   No. 18-CV-1736, 2019 U.S. Dist. LEXIS 45001 (S.D.N.Y. Mar. 19, 2019) ....................... 10

*Yiamouyiannis v. Consumers Union*,
   619 F.2d 932 (2d Cir. 1980) .................................................................................................. 4

### C.    Introductory Statement

Excluded from a parallel arbitration proceeding between the Parties, the Plaintiffs ("Sparbar"; and "Gill"/"Jazz", respectively) brought suit for an *extraordinary* set of communications that the Defendants – acting *ultra vires* of any purported corporate role – sent to Jazz's wife, father and investors wild and defamatory claims entirely untethered from any litigation purpose. Defendants moved to Dismiss arguing that they were protected by a litigation privilege and that the Complaint failed to allege any cause of action under New York or other law.

For the reasons argued here, the Plaintiffs respectfully submit that the Motion to Dismiss should be denied and this matter proceed to Discovery and a resolution on its merits.

### D.    Factual and Procedural Background

The First Amended Complaint ("FAC") alleges that in 2019, folks pitched Plaintiffs on an IPO, which required the creation of a Delaware entity to market the Plaintiffs' brand in the United States and serve as a vehicle for going public, FAC at ¶¶ 22-26. The promoters introduced the Defendants as necessary parties to join the Board of the newly formed U.S. entity, FAC ¶¶ 26-29, and as of early 2020, Plaintiff Singh remained a majority shareholder while the Defendants were CFO and CEO, respectively, FAC ¶¶ 30-31. Things went south with the business relationship and the Defendants sought to oust Jazz through intimidation including a penpal campaign to people who knew Jazz, FAC at ¶¶ 33-35.

The Letters, apparently delivered by hand to the family members, were wildly out of line with any typical pre-litigation shadow-boxing. An excerpt that follows what looks more like something out of an Agatha Christie novel, or a mystery story by Sir Arthur Conan Doyle, than a litigation demand letter.

> **\*\*PRIVATE & CONFIDENTIAL INFORMATION\*\***
> **\*\*\*FOR THE ATTENTION OF THE ADDRESSE ONLY\*\*\***
>
> Mrs Sandra GILL
> 90 Cubbington Road
> Leamington Spa
> Warwickshire
> CV32 7AG
>
> Mrs Gill,
>
> Please find enclosed documentation that has been issued against your Husband Jasvinder Singh Gill, CEO & President of SparBar INC & SparBar LTD.
>
> We would advise that you take the time to read and consume the information that is enclosed in this envelope.
>
> We are sure that Jasvinder Singh Gill your Husband has HIDDEN THIS DOCUMENTATION REGARDING FRAUDULANT ACTIVITY from YOU.
>
> Please take legal advice as we will be actioning against yourself as well as your husband as outlined in our Legal Documentation, 'enclosed'. As you have been directly profiting from these FUNDS that have been Fraudulently taken by Jasvinder Singh Gill.
>
> We look forward to hearing from your Legal Representatives.
>
> Your sincerely
>
> **Board Members of SparBar Inc.**

Illustration 1 – Excerpt from Exhibit B (ECF 14-2)

Similar communications were shared with Jazz's father and investors and contained information that was not true and alleged serious crimes including fraud, theft, embezzlement, conversion and other violations of the Penal Codes of Delaware, New York and the United Kingdom, FAC at ¶ 37-42.  And while Civil Rights Law § 80-a, bars actions for Alienation of Affection and intentional interference in a marriage, *See generally* <u>Fearon v. Treanor</u>, 272 N.Y. 268 (1936), the text and context of the communication show an attempt to interfere in the Plaintiffs' family relationships and not for any legitimate business or litigation purpose.

Plaintiffs sued, *See* Complaint at ECF 1, and with leave of Court and new Counsel Amended the Complaint, *See* First Amended Complaint at ECF 14 with Exhibits.  After trading

Letters and participating in a Hearing before her Honor, *See* ECF listing on May 23, 2023, the Defendants brought a Motion to Dismiss under Rule 12(b)(6), ECF No. 21, which the Plaintiffs now respectfully oppose and ask the Court to deny.

**D.    Argument**

      **I.    Legal Standards that Apply to Consideration of this Motion to Dismiss**

          a.    **Defamation Actions are Subject to the same Pleading Standard (Twombly-Iqbal and Rule 8) as Other Tort Actions**

"In resolving a motion to dismiss, the Court must 'construe the Complaint liberally, accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences in plaintiff['s] favor.' " Ansoralli v. CVS Pharmacy, Inc., No. 16-CV-1506 (CBA)(JRR), 2017 U.S. Dist. LEXIS 233792, at *4 (E.D.N.Y. Sep. 29, 2017)(edit in original) *citing* Faliano v. Fid. Nat'l Title Ins. Co., 684 F.3d 309, 311 (2d Cir. 2012).  The Second Circuit has made clear that Complaints should be "construed [] liberally, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Kim v. Kimm, 884 F.3d 98 (2018) *citing* Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

"A complaint must plead enough facts to state a claim to relief that is plausible on its face," Milton v. Wazed, No. 16-cv-4542 (MKB)(JO), 2018 U.S. Dist. LEXIS 56115, at *12-13 (E.D.N.Y. Mar. 30, 2018) at *12 *citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). As this Court highlighted, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" Ansoralli, *5 *citing* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) *quoting* Twombly, 550 U.S. at 556.  Only if the

3

Plaintiff fails to "nudge [their] claims across the line for conceivable to plausible" should the case be dismissed, Ansoralli, at *5 *citing* Twombly, 550 U.S. at 570.

The Second Circuit "ha[s] long made clear that 'defamation actions are, for procedural purposes . . . to be treated no differently from other actions,' " Biro v. Condé Nast, 807 F.3d 541, 541, 545 (2d Cir. 2015) *citing* Yiamouyiannis v. Consumers Union, 619 F.2d 932, 940 (2d Cir. 1980). And given that the "actual malice" standard is irrelevant here because the Plaintiffs are not public figures, *See* N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964) or limited purpose public figures per Lerman v. Flying Distrib. Co., 745 F.2d 123, 137 (2d Cir. 1984), the Iqbal-Twombly standards apply that ask whether the Complaint plausibly alleges a Complaint, rather than require the Plaintiff prove its case or allege the Defendants' frame of mind with specificity.

Further, as in any civil claim, "the district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." Green v. Hinds, No. 17-CV-5422 (DRH)(ARL), 2018 U.S. Dist. LEXIS 208965, at *14-15 (E.D.N.Y. Dec. 10, 2018) *citing* Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010); Chambers v. Times Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

And while "[a] court may take judicial notice of a document filed in another court", it may do so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006)) *citing* Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) *and* rejecting testimonial evidence in extraneous documents introduced to argue truth or falsity of factual claim. That principle that requires the Court to look at the Complaint and its integrated documents, and not random, de-

4

contextualized excerpts from Depositions requires the Court to reject the Defendants' attempt to introduce disembodied quotes to dispute the factual claims in the Complaint.

With that context that establishes the case should move forward if there are plausible claims on the face of the Complaint, we turn to the Causes of Action at issue in this case:

## II.     The Claims

### a.     Defamation

"To prove a claim for defamation under New York law a plaintiff must show:

'(1) a false statement that is

'(2) published to a third party

'(3) without privilege or authorization, and that

'(4) causes harm, unless the statement is one of the types of publications actionable regardless of harm.'"

Greer v. Media, No. 22-1970-cv, 2023 U.S. App. LEXIS 7407, at *5 (2d Cir. Mar. 29, 2023)(formatting added for clarity) *quoting* Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 245 (2d Cir. 2017).

### (1.)    False Statement

Defendant concedes that the First Amended Complaint plausibly alleges that false statements were made about Jazz, Memorandum in Support, at p. 5 (ECF 21-3).  Defendants argue that the alleged factual claims were not "concerning" Plaintiff Sparbar Ltd., *Id.*

But that argument does not withstand fair scrutiny.  While certainly, the cover letter talks about how Jazz hid information, imperiled his family, and committed fraud – reading the attached legal paperwork and the full context of the strange letters makes clear that the alleged wrongdoing was done in Jazz's role *with* Sparbar, *as CEO* of Sparbar, and *on behalf of* Sparbar.

5

When New York law talks about the requirement that an allegedly defamatory statement be published "of and concerning" the plaintiff, *See* Gross v. Cantor, 270 N.Y. 93, 96 (1936) *citing* Corrigan v. Bobbs-Merill Co., 228 N.Y. 58, 64 (1920); the point is to exclude from actionable claims those allegations made as an "an impersonal reproach of an indeterminate class", Gross, 270 N.Y. at 96.  In cases like this where the smear is intended to harm the professional reputation and personal relationships; and accuses the wrongdoer of committing crimes in their role with the Company, "it is for the jury to decide, whether the charge has the personal application averred by the plaintiff." Gross, 270 N.Y. at 96 (collecting cases).  For a modern application, *See* Three Amigos SJL Rest., Inc. v. CBS News Inc., 132 A.D.3d 82 (N.Y. App. Div. 1st Dep't 2015)(finding that on Motion to Dismiss, the Court will accept that allegations establish cause of action because questions about *who* is being accused in a defamatory statement are fact-intensive).

Therefore, the Plaintiffs respectfully submit that the Complaint plausibly alleges that defamatory statements were published about the Plaintiffs.

### (2)     Published to a third party

Defendant concedes the issue, *See* Memorandum in Support at p. 5 (ECF 21-3). Defendants wave toward issues about the authenticity of the letter and who sent it; and out-of-context quotes from an hours-long deposition about one of the Plaintiff's specific knowledge of who sent what.

But on a Motion to Dismiss, all of the plausible allegations must be accepted as true, and random extrinsic documentation of out-of-context quotes from a deposition in another case cannot be considered and provide no insight into interpreting the Complaint.

### (3)     Lack of Privilege

The Late Court of Appeals Judge Abdus-Salaam laid out the New York rule on litigation privilege as follows:

> "[The Court of Appeals] recognize[s] that extending privileged status to communication made prior to anticipated litigation has the potential to be abused.  Thus, applying an absolute privilege to statements made during a phase prior to litigation would be problematic and unnecessary to advance the goals of encouraging communication prior to the commencement of litigation.  To ensure that such communications are afforded sufficient protection the privilege should be qualified.  Rather than applying the general malice standard to this pre-litigation stage, the privilege should only be applied to *statements pertinent to a good faith anticipated litigation*".

Front, Inc. v. Khalil, 24 N.Y.3d 713, 719-720 (2015)(emphasis added).

Judge Abdus-Salam made clear that the right to take advantage of the "litigation privilege" is not provided to those:

> "attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims, unsupported in law and fact, in violation of counsel's ethical obligations.  Therefore, we hold that statements made prior to the commencement of an anticipated litigation are privileged, and that the privilege is lost where a defendant proves that the statements were not pertinent to a good faith anticipated litigation."

Front, 24 N.Y.3d at 720.

The Decision this Summer in Gottwald v. Sebert, Cases No. 32 and 33, 2023 N.Y. Lexis 913, ___ N.Y.3d _____ (June 13, 2023)("Dr. Luke v. Ke$ha") does not change that analysis. The Majority made clear that it is not relevant if the defamatory statements are made prior to the filing of the action or contains the contents of a future Complaint – if not in good faith then the defamatory statements are not privileged, Gottwald, at n. 3.

7

In this case, the baseless threats to sue Jazz's wife, the unmoored claims of fraud and the bullying, harassing, and intimidating nature of the communications vitiate any potential litigation privilege that the Defendants claim.

### (4)   Caused Harm or Actionable Per Se

Claims that a business professional has engaged in fraud and is hiding information from investors; and that a husband is hiding the liability he imposed on his wife (and father) is defamatory *per se* because it tends to harm their business reputation and standing as a husband, son, and business professional.

Further, the communications harmed the Plaintiffs' reputation in measurable ways. "New York courts treat harm stemming from injury to reputation as sounding in defamation." Glob. Supplies NY, Inc. v. Electrolux Home Prods., No. 21-674, 2022 U.S. App. LEXIS 7108, at *4 (2d Cir. Mar. 18, 2022) *citing* Goldman v. Barrett, 733 F. App'x 568, 570 (2d Cir. 2018); Morrison v. Nat'l Broad. Co., 19 N.Y.2d 453 (1967).

The First Amended Complaint spells out chapter-and-verse the damages suffered including the business divorces initiated by the brand ambassadors and the loss of Topline as a manufacturer, FAC at ¶ 71-72, *et passim*.

In conclusion, we want to emphasize that the factfinder in this case will need to look at the frightening and strange letters sent by the Defendants to the investors and the Plaintiffs' family members and decide whether this was "all's fair in love and war"-style pre-litigation demands, or actionable defamation.  At this stage of the litigation, though, it cannot be fairly disputed that the First Amended Complaint and accompanying documentation nudged the allegations over the line from conceivable to plausible.

For this reason, the Plaintiffs respectfully submit that the Motion to Dismiss should be denied in its entirety and the case move forward through Discovery.

### b. Claim Under English Law

Plaintiffs understand that Counsel for the Defendants is an attorney in the U.K., and will only respond by saying that in light of the validity of the claims under New York law, there is certainly a cause of action under English law. But this is academic because the Defendants have not argued here that English law controls.

### c. Tortious Interference

"To prevail on a claim for tortious interference with business relations . . . under New York law, a plaintiff must show that

(1) the plaintiff had business relations with a third party;

(2) the defendant interfered with those business relations;

(3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and

(4) the defendant's acts injured the relationship.' "

16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 261 (2d Cir. 2015)(formatting added) *citing* Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008).

The First Amended Complaint plainly lays out the role of brand ambassadors and the key role those ambassadors played in the business, *See* FAC at ¶ 14-16, 21; as well as the importance of Topline as a reliable manufacturer, *See* FAC at ¶ 20-21. The First Amended Complaint describes how the Defendants' actions interfered wrongly with those key business relationships and caused those connections to terminate, FAC *passim*.

9

Defendants argue that Tortious Interference is duplicative of the Defamation claim. But while it's true that cases have sometimes held that "a claim for tortious interference is duplicative of a defamation claim . . . where the entire injury complained of by plaintiff flows from the effect on his reputation." Deaton v. Napoli, No. 17-CV-4592 (RRM)(GRB), 2019 U.S. Dist. LEXIS 167954, at *24 (E.D.N.Y. Sep. 27, 2019) *quoting* Travelex Currency Servs., Inc. v. Puente Enterprises, Inc., No. 18-CV-1736 (ER), 2019 U.S. Dist. LEXIS 45001, at *7 (S.D.N.Y. Mar. 19, 2019); Hengjun Chao v. Mount Sinai Hosp., 476 F. App'x 892, 895 (2d Cir. 2012).

But that is not the full story here.

The allegations in the First Amended Complaint are that Defendants interfered with relationships by, among other things, the publication of the false statements themselves. Regardless of whether the Plaintiffs' reputations remained stellar, the fact that folks are threatening the family members of the CEO is itself a reason for Third Parties to want to dissociate from a Company and a brand – completely independently of any substantive reputational interests.

More broadly, the issues raised in the "duplication" arguments, *See generally* Deaton, at *24-26 (collecting cases) are where the tortious interference claim is brought to circumvent the one-year statute of limitations on defamation claims. That is irrelevant here and the Plaintiffs' right to plead in the alternative and hypothetically should be upheld, especially where the Defendant disputes the Defamation claim.

10

### **F.     Conclusion**

For these reasons we respectfully submit that this Honorable Court should Enter an Order denying the Motion to Dismiss in its entirety and providing such other and further relief as the Honorable Court may deem just and proper.

DATED:     **SEPTEMBER 5, 2023**

                                                RESPECTFULLY SUBMITTED,

By:     *[signature]*

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Plaintiffs*

Served on all Appearing Parties via ECF