UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
SPARBAR LTD. and JASVINDER SINGH
GILL,

                        Plaintiffs,                NOT FOR PUBLICATION
                                                      **MEMORANDUM & ORDER**
      -against-                              No. 23-cv-184 (CBA) (VMS)

KENNY LAM and LIN KUAN LIANG
NICOLAS,

                        Defendants.
------------------------------------------------------x

**AMON, United States District Judge:**

## INTRODUCTION

Before me is a motion by Defendants Kenny Lam ("Lam") and Lin Kuang Liang Nicolas ("Nicolas" and, together with Lam, "Defendants") to dismiss the Amended Complaint brought by SparBar Limited ("Ltd.") and Jasvinder Singh Gill ("Gill," and together with Ltd., "Plaintiffs"). (ECF Docket Entry ("D.E.") # 21 ("Defs. Mot.").) Plaintiffs allege that Defendants sent defamatory letters to Gill's wife and father as well as two defamatory press releases to vendors, brand ambassadors, shareholders, and investors of Ltd., a United Kingdom entity, and its associated Delaware entity, SparBar Inc. ("Inc."). (D.E. # 14 ("Am. Compl.").) The Amended Complaint brings four causes of action: (1) "Slander and Libel under New York law" (id. ¶¶ 75-84); (2) "Slander and Libel under United Kingdom law" (id. ¶¶ 85-86); (3) tortious interference with contractual relations (id. ¶¶ 87-93); and (4) tortious interference with economic advantage (id. ¶¶ 94-99). At oral argument on November 15, 2023, Plaintiffs conceded that New York law applies to this case and agreed to the dismissal of the second cause of action. (Minute Entry dated November 15, 2023.) Plaintiffs also conceded that the second press release, sent in August 2022, was subject to litigation privilege and not actionable. (Id.) I must now determine whether

1

a claim for the remaining three causes of action based on the letters to Gill's family members and the first press release. For the following reasons, I GRANT Defendants' motion to dismiss.

## DISCUSSION

### I. Jurisdiction

As a threshold matter, I note that I have subject matter jurisdiction over these claims and personal jurisdiction over Defendants. I have subject matter jurisdiction pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(2), as Gill, a citizen of the United Kingdom, along with Ltd., a United Kingdom entity, have brought this action against Defendants, both of whom are United States citizens residing in New York. (Am. Compl. ¶¶ 1-2, 4.) Contrary to Defendants' contentions (see D.E. # 24 ("Defs. Reply") 3), the "presumption against extraterritoriality," discussed by the Supreme Court in the recent case Abitron Austria GmbH v. Hetronic International Inc., 600 U.S. 412 (2023), is inapposite here. The presumption against extraterritoriality is a principle of statutory interpretation that says "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." Id. at 417. Defendants conflate this principle, used in determining the applicability of statutes enacted by Congress (such as the Lanham Act, at issue in Abitron), with subject matter jurisdiction, which in this case arises from the parties' diversity rather than from any federal statute.

As to personal jurisdiction, Defendants' argument that this Court must decide that New York's long-arm statute applies to the out-of-state conduct of delivering the letters (Defs. Reply 3-4) is also erroneous and confuses general and specific personal jurisdiction. See generally Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923-25 (2011). This Court can exercise personal jurisdiction over the Defendants because they are both domiciled in New York.

2

(Am. Compl. ¶¶ 4-5.) New York is thus "the paradigm forum for the exercise of general jurisdiction," and I need not rely on New York's long-arm statute. Goodyear, 564 U.S. at 924.

## II. Individual Liability for Defamation in a Corporate Capacity

I also reject Defendants' argument that to hold Defendants liable in their individual capacity for communications they sent in their capacity as "Board Members of SparBar Inc." Plaintiffs would have to pierce the corporate veil. (See Defs. Mot. 10-13.) Defendants argue that treating defamation as a tort for the purpose of holding individuals liable for their acts on behalf of the corporation would infringe on a corporation's First Amendment rights by discouraging a corporate board from "freely notify[ing] its shareholders and investors of a perceived wrong perpetrated by the corporation's CEO," and request that this Court "close a loophole in defamation law" by requiring Plaintiffs to pierce the corporate veil. (Id.)

I disagree that any "loophole" exists. It is true that "First Amendment protections are essential to provide 'breathing space' for freedom of expression," and the law supplies that breathing space by requiring a plaintiff to plead the requisite mental state at trial. Palin v. New York Times Co., 940 F.3d 804, 816-17 (2d Cir. 2019) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 271-72 (1964)). That does not, however, impact the pleading standard at the motion to dismiss stage, and plaintiffs bringing claims against individuals must plead only with sufficient specificity to meet the plausibility standard. Id. Courts have held that this is sufficient to balance a defendant's interest in free expression with the law's need to prevent individuals from injuring others with false, defamatory speech. See id. at 817 ("[T]his [First Amendment] protection is precisely why [the plaintiff's] evidentiary burden at trial—to show by clear and convincing evidence that [the defendant] acted with actual malice—is high. At the pleading stage, however, [the plaintiff's] only obstacle is the plausibility standard of Twombly and Iqbal."). Defendants

3

make no arguments and point to no precedent demonstrating that defendants who happen to be members of corporate boards should be entitled to greater protection against tort liability than ordinary citizens, and I see no reason to treat defamation differently from any other tort. See Pisani v. Staten Island Univ. Hosp., 440 F. Supp. 2d 168, 178-79 (E.D.N.Y. 2006) (declining to dismiss defamation claims against individual defendants based on their participation in preparing allegedly defamatory corporate press release).

### III. State Law Defamation Claims

Defendants are correct, however, that Plaintiffs have not adequately pleaded the elements of a defamation claim. (See Defs. Mot. 9.) Those elements, under New York law, are "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." Palin, 940 F.3d at 809. With respect to falsity, Plaintiffs have the burden of "specifically identif[ying]" the statements they allege are false, or not substantially true. Leidig v. BuzzFeed, Inc., 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019), aff'd, 788 F. App'x 76 (2d Cir. 2019). Although, under New York law, falsity turns on "legal sufficiency, not journalistic competence," Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 247 n.8 (2d Cir. 2017), nevertheless, "[t]o survive a motion to dismiss, plaintiffs must do more than 'perfunctorily state that a statement is false.'" Goldman v. Reddington, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019) (quoting Cabello-Rondón v. Dow Jones & Co., Inc., No. 16-cv-3346 (KBF), 2017 WL 3531551, at *6 (S.D.N.Y. Aug. 16, 2017), aff'd, 720 F. App'x 87 (2d Cir. 2018)). Plaintiffs must allege specific "facts that, if proven, would establish that the defendant's statements were not substantially true." Tannerite Sports, 864 F.3d at 247. For example, in Goldman, the court held that plaintiff had sufficiently pled the falsity of a rape allegation by asserting that a report by the district attorney's office found

"no credible proof of any sexual conduct." Goldman, 417 F. Supp. 3d at 168. The Court held these specific facts were sufficient, taken as true, to "allow a reasonable person to consider" the accusation to be false. Id. at 173-74 (quoting Tannerite Sports, 864 F.3d at 245-47). On the other hand, courts dismiss defamation claims where Plaintiffs assert in a vague, general manner that the contested statements are false, without articulating with specificity how those statements are false. See, e.g., Cabello-Rondón, 2017 WL 3531551, at *6 ("To plausibly plead falsity, [plaintiff] must do more than perfunctorily state that a statement is false; rather, [plaintiff] 'must identify how the defendant's statement was false.'" (alteration in original) (quoting Tannerite Sports, 864 F.3d at 245)). Here, Plaintiffs have failed to adequately plead this element for each of the relevant communications.

a. August 21 Press Release

Plaintiffs allege that on August 21, 2022, Defendants circulated an email press release to shareholders of Inc., brand ambassadors, and other parties associated with Gill. (Am. Compl. ¶ 51.) It alleged that the behavior of Gill and Inc's "new alleged board" was "unlawful," that Gill "is trying to stop us from informing you of the truth," and that the new board was "phony." (Id.) The email press release (which is attached to the Amended Complaint as an exhibit) was signed by the "Board Members of SparBar Inc." as well as Lam and Nicolas. (Am. Compl., Ex. C ("Aug. 21 Press Release") 2.) The email also contained links to "legal letters demonstrat[ing]" that Defendants and the board of Inc. were "fully prepared to take action against" Gill, Ltd., and the "new purported board." (Id.) In the linked demand letters, Defendants' counsel accused both Gill and Ltd. of being in breach of binding agreements through a laundry list of financial chicanery, including "[d]iverting [Inc.] funds to [Ltd.];" "[f]und[ing] [Gill's] general living expenses;" "misstating [Inc.'s] corporate accounts, placing monies due to [Inc.] in jeopardy from Her

5

Majesty's Revenue and Customs;" and "[f]ailing to pay [Gill's] personal taxes[,] placing monies due to [Inc.] in jeopardy from Her Majesty's Revenue and Customs." (Id. 7.) Plaintiffs allege that the statements the Amended Complaint references in the August 21 Press Release and the attached letters "were not and are not true" (Am. Compl. ¶¶ 52, 54) and were "false" (id. ¶ 51).

But apart from the perfunctory allegations that the statements were "false" and "not true," Plaintiffs do not plead any specific facts that, if proven true, would allow a reasonable person to consider the allegedly defamatory statements not substantially true. Moreover, apart from listing three examples of purportedly false statements (id.), Plaintiffs do not even allege which of the additional statements in the press release and attached letters are false. With respect to the three statements Plaintiffs list in the Amended Complaint as false, Plaintiffs do not allege how Defendants' specific accusations were false, let alone point to any alternative account of the supporting facts asserted by Defendants in their press release that, if proven true, would "allow a reasonable person to consider" Defendants' assertions to be false. For example, two of the allegedly defamatory statements listed in the Amended Complaint are that "[Gill's behavior] was completely unlawful and this new alleged board is similarly unlawful" and that the Inc. board is "phony." (Id.) But in the press release itself, Defendants recount the circumstances that led them to believe Gill's behavior was unlawful and the new board was "phony": after receiving the legal demand letters from Defendants, "Gill unilaterally convened a board meeting, contrary to the bylaws of the company, and purported to remove and replace [Defendants] as board members." (Aug. 21 Press Release 2.) Plaintiffs do not plead with any specificity that Gill's unilateral replacement of the board was, in fact, within his authority under Inc.'s bylaws such that a reasonable person could be led to believe that Defendants' statements were untrue. Plaintiffs have not adequately pleaded the element of falsity with respect to this press release.

### b. October 2022 Letters to Gill's Father and Wife

Plaintiffs allege that on October 22, 2022 "a bizarre, unsigned letter [was] sent from 'Board Members of SparBar Inc." to Gill's father, alleging that Gill "hid this documentation regarding fraudul[e]nt activity" from his father, "defrauded his own [b]rother" and his brother's friends, and directly profited from the fraudulently obtained funds. (Am. Compl. ¶¶ 36-37.) The letter attached the two legal demand letters Defendants had sent to Gill. (Id.; see also id. Ex. A at 2-4.) Plaintiffs further allege that on that same day, "[a]nother bizarre letter was addressed to Gill's wife," alleging that her husband hid the attached documentation regarding fraudulent activity (the same demand letters) from her. (Id. ¶ 44.)

Plaintiffs' defamation claims fail with respect to these letters because they have not adequately pleaded the falsity element. As with the August 21 press release discussed above, Plaintiffs simply assert that the statements in the letters and the "accompanying paperwork" "are not and were not true." (Id. ¶¶ 38, 40, 45, 47.) Plaintiffs do not explain with specificity what statements in the accompanying paperwork were not substantially true or how any of the statements were not substantially true, and they certainly do not allege "facts that, if proven, would establish that the defendant's statements were not substantially true." See Tannerite Sports, 864 F.3d at 247.

### IV. Tortious Interference Claims

As to Plaintiffs' third and fourth claims for tortious interference with contractual relations and economic advantage respectively, I dismiss these claims as "merely duplicative of the defamation claim[s]" because it is indisputable that the "injury pleaded in relation to the tortious interference claims flows from the effect on Plaintiffs' reputation resulting from Defendants' statements." See, e.g., Grayson v. Ressler & Ressler, 271 F. Supp. 3d 501, 520 (S.D.N.Y. 2017).

Courts have dismissed such claims as duplicative even when dismissing the underlying defamation claim for failure to state a claim. See, e.g., Hengjun Chao v. Mount Sinai Hosp., 476 F. App'x 892, 895 (2d Cir. 2012).

## CONCLUSION

For the foregoing reasons, I dismiss Plaintiffs' claims without prejudice and grant Plaintiffs thirty days to file an amended complaint that remedies the deficiencies in the defamation cause of action by pleading with specificity exactly which statements in the communications were false and detailing a factual account that, if proven true, would establish the falsity of those statements.

SO ORDERED.

Dated: January 26, 2024
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge

8